IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Nicholas Drilling, ) | No. CV 08-0786-PHX-FJM (MHB) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Dora B. Schriro, et al., ) | |
| Respondents. ) | |

TO THE HONORABLE FREDERICK J. MARTONE, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner John Drilling's *pro se* Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, filed on April 24, 2008 (Doc. #1). Respondents filed an Answer on September 3, 2008 (Doc. #12.), and Petitioner filed a Reply on October 23, 2008 (Doc. #15).

**BACKGROUND**

On August 4, 2005, Petitioner was indicted by an Arizona grand jury on sixteen felony counts: four counts of Involving or Using Minors in Drug Offenses, seven counts of Sexual Abuse, two counts of Sexual Conduct With a Minor, one count of Public Sexual Indecency to a Minor, one count of Possession or Use of Dangerous Drugs, and one count of Possession of Drug Paraphernalia. (Doc. #12, Exh. A.) Petitioner entered into a plea agreement on December 2, 2005, in which he agreed to plead guilty to Counts 1 and 5, Involving a Minor

1   in a Drug Offense, class 2 felonies, and Counts 9 and 14, as amended, Attempted Sexual
2   Conduct With a Minor Over the Age of 15, class 3 felonies. (Doc. #12, Exh. C.) The plea
3   agreement set forth, in paragraph one, the sentencing range for Counts 1 and 5 as follows:
4   a minimum prison sentence of 4 years, a presumptive sentence of 5 years, and a maximum
5   sentence of 10 years: on Counts 9 and 14, the sentencing range was indicated as a minimum
6   of 2.5 years, a presumptive of 3.5 years, and a maximum sentence of 7 years. (Id.) Probation
7   was indicated as available on all counts. (Id.)

8         The parties stipulated in paragraph two that Petitioner would be sentenced to up to
9   nine years in prison on Counts 1 and 5, and that the sentences would run consecutively to
10  each other. (Id.) They also agreed that Petitioner would be placed on lifetime probation on
11  Counts 9 and 14, but that if Petitioner rejected probation, he would receive consecutive
12  prison sentences on those counts, and they would also run consecutive to Count 1. (Id.)
13  Petitioner placed his initials next to all of the paragraphs listed as terms of his plea
14  agreement, and placed his signature at the end of the plea agreement, avowing that he "read
15  and approved all of the previous paragraphs . . ." (Id.)

16        The plea agreement also included two addendums, one addressing sex offender
17  registration requirements, and a second addressing Petitioner's agreement to waive his right
18  to a jury finding of facts used to aggravate his sentence. (Id., at 3-4.) In the sex offender
19  addendum, Petitioner acknowledged by initialing and signing that he would be subject to a
20  lifetime sex offender registration requirement. (Id., at 3.) In the second addendum he
21  acknowledged by initialing and signing that he consented to "judicial fact finding by
22  preponderance of the evidence as to any aspect or enhancement of sentence . . .," and that he
23  was "waiving and giving up [his] right to a trial by jury to determine guilt and to determine
24  any fact used to impose a sentence within the range set forth in Paragraph 1 on Page 1 of [the
25  plea agreement]." (Id., at 4.)

26        The plea agreement was presented to the court after a settlement conference with the
27  judge who presided over the change of plea proceeding. (Doc. #12, Exh. B.) During this
28  settlement conference, the presiding judge advised Petitioner of the range of prison time he

1  would be facing under the plea terms that the prosecutor eventually agreed to: "the judge's
2  decision as to whether to go as low as eight or as high as 18 is going to turn on whether there
3  are aggravating or mitigating circumstances as he sees them in the case . . .[s]o you just need
4  to understand that you need to be able to accept the worst and hope for the best." (Id., at 21.)
5  During the change of plea proceeding that followed, in response to the judge's questions,
6  Petitioner acknowledged that he had read his plea agreement (Id., at 25), that he understood
7  it (Id., at 25-26), that his plea was voluntary (Id., at 27), that he was agreeing to judicial
8  finding of facts used to aggravate the sentence based upon a preponderance of evidence
9  standard (Id., at 29-30), that he would receive a minimum of 8 years and a maximum of 18
10 years in prison on Counts 1 and 5 (Id., at 33, 36-37), and that he would be placed on lifetime
11 probation on Counts 9 and 14 (Id., at 33).

12  Petitioner then plead guilty to the four counts and admitted the underlying conduct,
13 that is, that he provided methamphetamine to his 15 year old daughter on the two occasions
14 alleged in the Indictment, and that he digitally penetrated her vagina on the two occasions
15 alleged in the Indictment. (Id., at 42-43.) Sentencing and a mitigation hearing took place
16 on February 23, 2006. The judge confronted Petitioner at the outset of that proceeding with
17 statements Petitioner had made denying his guilt to the presentence report writer. (Doc. #12,
18 Exh. D, at 5-7.) The judge pointedly asked: [a]re you denying that you engaged in the
19 criminal conduct that you pled guilty to?" Petitioner responded: "No. No, Your Honor."
20 (Id., at 6.) The judge continued: "I'm talking about the denial of having engaged in criminal
21 conduct, the fact that [the victim] – the allegations [the victim] had fabricated these claims,
22 so on and so forth, you're not saying that and you never intended to say that; is that fair to
23 say?" Petitioner responded: "Yes, sir." (Id., at 7.)

24  The mother of the victim made a statement to the court describing the emotional
25 trauma Petitioner caused their daughter:

26  Before the drugs and sexual abuse occurred, my daughter was a great student, goal oriented, compassionate, she had high self-esteem and was healthy.
27  During the addiction and sexual abuse, my daughter's grades plummeted. She lost interest in everything. She was running away, violent, cutting on herself,
28  and became so skinny she looked like a skeleton.

1 (Id., at 12.)

2 The victim's mother then asked that the court impose the harshest sentence possible. (Id.,
3 at 13.)

4       Petitioner's girlfriend, Linda Johnson, spoke in mitigation, describing Petitioner's
5 kindness to her and her to children over the years since they met in 2002, and his strong work
6 ethic. (Id., at 14-16.) Petitioner then spoke on his own behalf:

> That I do accept full responsibility for what I've been charged with and I feel a great deal of remorse. I apologize to the court, society, to the victim, to Linda as well for that matter. I would just hope that what you have as far as the information before you will allow you naturally to provide me with the most lenient sentence possible. I am a hard worker, contributing person. You mentioned my age at the settlement hearing which is something I really hadn't thought of until then. And other than that I do accept culpability for what I've been accused of, to eliminate the questions that came about with that. And I apologize, Your Honor.

(Id., at 16-17.)

13       After hearing argument for an aggravated sentence by the prosecutor, and for a
14 minimum sentence by Petitioner's attorney, the court imposed an aggravated term of six
15 years[1] on Counts 1 and 5, to run consecutively, and lifetime probation on Counts 9 and 14,
16 to run concurrent to each other and consecutive to the prison sentence. (Doc. #12, Exh. D,
17 at 25-27; Exh. E.) The court considered the aggravating and mitigating circumstances
18 presented, and found that the aggravating circumstances outweighed the mitigating
19 circumstances: "specifically the exploitation of his own daughter, the abuse of position of
20 trust . . . outweigh the mitigation in the case." (Doc. #12, Exh. D, at 24-25.) Petitioner was
21 advised of his right to challenge the orders of the court by filing a Rule 32 petition within 90
22 days. (Id., at 29.)

23       On October 5, 2006, Petitioner's counsel filed a Notice of Completion of Post-
24 Conviction Review, indicating that she had reviewed all of the court documents and
25 transcripts and spoken with Petitioner, and was unable to find any claims for relief. (Doc.

---

[1] The presumptive sentence according to the plea agreement was five years: thus, the court imposed on each count an additional year in the department of corrections in aggravation. See, supra. at p.2.

- 4 -

1  #12, Exh. I.) On November 3, 2006, Petitioner filed a *pro se* Petition for Post-Conviction
2  Relief in the trial court. (Doc. #12, Exh. F.) Petitioner raised two claims therein: the denial
3  of his right to effective assistance of counsel by counsel's failure to advise him of his right
4  under Blakely v. Washington[2] to have a jury determine aggravating factors beyond a
5  reasonable doubt, and the denial of his right to equal protection of the law by the imposition
6  of a lifetime period of probation. (Id., attach. A.) On January 17, 2007, the trial court
7  denied relief and issued the following decision:

> The Court finds that this Court expressly advised the Defendant that he was waiving his Sixth Amendment rights pursuant to *Blakely v. Washington*, but the Court did not label these rights as such. Instead, the Court advised that a jury finding of facts that could aggravate a sentence is required, unanimously and beyond a reasonable doubt, and under the terms of the plea agreement, the court will be making such findings by a lower standard called a preponderance of the evidence. *Chang-Plea Transcript, p.* 29. These are the precise rights that Petitioner now claims he was not aware of and he didn't knowingly waive. Yet, Petitioner was advised of them, on the record, and expressly indicated that he wished to waive them. Petitioner's written plea agreement also states that he was advised of his constitutional rights, which presumably include Sixth Amendment rights.
> Thus, the allegation that Petitioner was sentenced in violation of *Blakely*, and that his lawyer failed to advise him of his Sixth Amendment rights as explained under *Blakely*, is belied by the record before the Court.
> The Petitioner's other allegations are non-specific allegations of ineffective assistance of counsel with respect to due process and trial rights. Even viewing this pro se pleading in the light most favorable to Petitioner, the Court is unable to discern an allegation that would rise to such a level where an evidentiary or other hearing is required.

18  (Doc. #12, Exh. G.)
19  Petitioner filed a motion for reconsideration, which was summarily denied on February 27,
20  2007. (Doc. #12, Exh. H.) Petitioner then filed a petition for review in the Arizona Court
21  of Appeals: that petition was summarily denied on December 7, 2007. (Id., Exh. K.) On
22  April 1, 2008, the Arizona Supreme Court summarily denied review of Petitioner's petition
23  for review of the appellate court denial. (Id., Exh. L.)
24  Petitioner timely filed his habeas petition on April 24, 2008, raising the following four
25  claims:

---

[2] 542 U.S. 296 (2004)

1. The denial of his right to effective assistance of counsel by "trial counsel['s] failure to inform Petitioner of his inherent right to have all factors alleged to be in aggravation found by a jury by proof beyond a reasonable doubt, prior to his signing of the offered plea agreement."

2. The denial of his right to due process by "the prosecution surreptitiously plac[ing] a waiver of fundamental rights in the plea agreement in order to relieve itself of its burden of proof beyond a reasonable doubt, and acted in bad faith by placing consecutive sentences within the plea agreement outside the presumption of law."

3. The denial of his right to due process and equal protection of the law by "the imposition of lifetime probation exceed[ing] the appropiate statutory standard for the class of felony charged, denying state created liberties and substantive fundamental rights."

4. The denial of his right to due process and fundamental fairness by "the state act[ing] in bad faith regarding punishment of the plea agreement in relation to the charge within the plea agreement, denying Petitioner fundamental fairness of the plea bargaining process."

(Doc. #1.)

## DISCUSSION

**1.   AEDPA Standard of Review**

Pursuant to the AEDPA[3], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an

---

[3] Antiterrorism and Effective Death Penalty Act of 1996.

- 6 -

1 'unreasonable application' of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

Even when the court finds trial court error, it may not grant habeas relief unless the error had a "substantial and injurious" effect on the fact finder's decision----an even higher hurdle than a directly reviewing court's assessment of harmless error. Brecht v. Abrahamson, 507 U.S. 619, 631 (1993). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). In this case, the summary denial of review by the Arizona Supreme Court, affirming the trial court's post-conviction decision, makes the trial court's ruling the "last reasoned decision" of the state court. See Y1st v. Nunnemaker, 501 U.S. 797, 803-04 (1991).

**2.      Petitioner's Ineffective Assistance of Counsel Claim**

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id., 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id., 466 U.S. at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

The Strickland test also applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of

1  the guilty plea by showing that the advice he received from counsel fell below the level of
2  competence demanded of attorneys in criminal cases. Id. at 56. To satisfy the second prong
3  of the Strickland test, "the defendant must show that there is a reasonable probability that,
4  but for counsel's errors, he would not have pleaded guilty and would have insisted on going
5  to trial." Id. at 59.

6  Petitioner claims that his trial counsel was ineffective due to his "failure to inform
7  Petitioner of his inherent right to have all factors alleged to be in aggravation found by a jury
8  by proof beyond a reasonable doubt, prior to his signing of the offered plea agreement." The
9  trial court rejected this claim in the post-conviction proceedings, noting that it was "belied
10 by the record" of the change-of-plea proceeding that occurred, during which the court
11 advised Petitioner of the precise right that he "now claims he was not aware of and he didn't
12 knowingly waive." (Doc. #12, Exh. G.) The trial court also noted that Petitioner's "written
13 plea agreement states that he was advised of his constitutional rights." (Id.)

14 The trial court's rejection of Petitioner's ineffective assistance of counsel claim did
15 not contravene any clearly established Supreme Court precedent. The addendum to
16 Petitioner's plea agreement contained paragraphs that advised Petitioner of his right to a jury
17 determination of sentencing factors and that he was consenting to judicial fact finding by a
18 preponderance of the evidence of sentencing factors. Petitioner initialed these paragraphs,
19 acknowledging that he read and understood them. Even if Petitioner could establish that his
20 attorney did not discuss or explain this written waiver, the trial court ensured during the
21 change of plea colloquy that Petitioner understood that the judge would determine sentencing
22 factors by a preponderance of the evidence, and that Petitioner had read and understood his
23 plea agreement.

24 An attorney's alleged failure to advise a defendant of rights is not prejudicial when
25 the court covered those allegedly omitted topics during the change-of-plea colloquy itself.
26 See Gonzalez v. United States, 33 F.3d 1047, 1051-52 (9th Cir. 1994); Doganiere v. U.S., 914
27 F.2d 165, 168 (9th Cir. 1990) (Reasoning that the defendant "suffered no prejudice from his
28 attorney's prediction" that the defendant's sentence would be no more than 12 years'

1 imprisonment, as opposed to the 15-year term and 20-year probation term actually imposed, 2 because "prior to accepting his guilty plea, the court explained that the discretion as to what 3 the sentence would be remained entirely with the court.").

4       Petitioner has also not demonstrated that, were it shown that he did not understand the 5 rights as alleged, he would not have accepted and entered into the plea agreement.  The trial 6 court made it clear to Petitioner that pursuant to the terms of the plea agreement, he could 7 receive as little and 8 and as many as 18 years in prison.  Petitioner has not established or 8 even argued that a jury would not have found, as the judge did, the aggravating factors that 9 he exploited his own daughter and abused a position of trust.   In fact, Petitioner admitted 10 facts supporting this aggravation during the change of plea colloquy.  Furthermore, the trial 11 court found the mitigation presented to be established, but determined that the mitigating 12 factors were outweighed by the aggravating factors.

13       Even if Petitioner could have established that his trial counsel did not discuss with him 14 the right to a jury determination of aggravating factors, he can not demonstrate prejudice. 15 Cf. Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir. 2004) ("Courts have generally rejected 16 claims of ineffective assistance premised on a failure to investigate where the record 17 demonstrates that the defendant would have pled guilty despite the additional evidence and 18 where the additional evidence was unlikely to change the outcome at trial.").  The trial court 19 did not err in refusing to grant an evidentiary hearing or denying this claim.  The Court will 20 therefore recommend that Claim 1 be denied.

21 ///

22 ///

23 **3.    Petitioner's Prosecutorial Bad Faith Claims**

24       Petitioner's second and fourth claims, that "the prosecution surreptitiously placed a 25 waiver of fundamental rights in the plea agreement in order to relieve itself of its burden of 26 proof beyond a reasonable doubt, and acted in bad faith by placing consecutive sentences 27 within the plea agreement outside the presumption of law," and that "the state acted in bad 28 faith regarding punishment of the plea agreement in relation to the charge within the plea

1 agreement" are confusing, and do not appear on their face to state a recognizable claim. 2 There is no indication that the plea agreement itself was unconstitutional, or that Petitioner 3 did not enter it knowingly, intelligently and voluntarily, so as to indicate bad faith, or 4 "surreptitious"acts on the part of the prosecutor.

5 The court may dismiss claims that are too vague and speculative to warrant habeas 6 relief. See Anderson v. Collins, 18 F.3d 1208, 1220 (5th Cir. 1994); Hall v. Bellman, 935 7 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual 8 averments are insufficient to state a claim on which relief may be based"). Even construing 9 the allegations in a light most favorable to Petitioner, the Court can not discern valid claims, 10 and will therefore recommend that Claims 2 and 4 be denied.

11 **4.    Petitioner's Sentencing Claim.**

12 In Claim 3, Petitioner argues that a sentence of lifetime probation violates his Eighth 13 Amendment right to be free from cruel and unusual punishment and his due process right to 14 fundamental fairness. Under Arizona law, the imposition of probation is governed by A.R.S. 15 §13-901, et seq., which permits the imposition of lifetime probation for the conviction of a 16 chapter 14 felony offense or an attempt to commit such an offense as "the court believes is 17 appropriate for the ends of justice." A.R.S. §902(E) (2001). Petitioner pled guilty to a 18 chapter 14 felony offense, attempted sexual conduct with a minor over the age of 15, a class 19 3 felony under A.R.S. §13-1405. (Doc. #12, Exh. C.) The trial court had the discretion both 20 to impose a lifetime probationary sentence and to accept a plea agreement that included a 21 term of lifetime probation. See State v. Lee, 191 Ariz. 542, 544 (1998) (noting that a judge 22 has "wide latitude" to approve or reject a plea). Furthermore, Petitioner agreed to the 23 imposition of a lifetime probationary term in his plea agreement, and was given the option 24 of rejecting it in exchange for a prison sentence. (Doc. #12, Exh. C, ¶2.)

25 ///
26 ///
27 ///
28 ///

- 10 -

The United States Supreme Court has established "gross disproportionality" as the controlling factor in assessing Eighth Amendment claims. See Lockyer v. Andrade, 538 U.S. 63, 72 (2003). See also United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) ("the eighth amendment forbids only extreme sentences that are grossly disproportionate to the crime"). The Arizona courts apply a similar standard to determine what constitutes "cruel and unusual punishment" under the Eighth Amendment: A sentence violates the constitution only when "it is so disproportionate to the offense that it shocks the moral sense of the court and the community." State v. Davis, 206 Ariz. 377, 388 (Ariz. 2003). Petitioner agreed in his plea agreement to the imposition of lifetime probation: furthermore, a sentence of lifetime probation in this case was not grossly disproportionate to the crime. The trial court's rejection of this claim was not contrary to, and did not involve an unreasonable application of established Supreme Court precedent. The Court will therefore recommend that Claim 3 be denied.

For the reasons outlined above, the Court finds that Petitioner's Petition for Writ of Habeas Corpus lacks merit, and will therefore recommend that Petitioner's claims be denied and his petition dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114,

1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation.  See Fed. R. Civ. P. 72.

DATED this 31st day of December, 2008.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge